IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA M. MOHRING,

       Plaintiff,

v.

LATOYA HUGHES, WEXFORD
HEALTH SOURCES, INC., CHRISTINE
VINYARD, DR. CALDWELL, DR.
PERCY MEYERS, WARDEN DANIEL
MONTI, JOHN DOE, JANE DOE, DR.
ARORA, JANA RUETER, and DR.
KHAN,

       Defendants.

Case No. 25-cv-1859-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Johua M. Mohring, an inmate of the Illinois Department of Corrections who is currently incarcerated at Centralia Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Mohring initially filed a Complaint alleging deliberate indifference in the treatment of various conditions and injuries, as well as a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Mohring subsequently filed a motion for leave to file an Amended Complaint (Doc. 9). His Amended Complaint also alleges violations of the Eighth Amendment and the ADA.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to

screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Amended Complaint

Mohring suffers from a traumatic spinal cord injury as well as two injuries to his right knee. He received corrective surgery for his knee prior to the events described in his Amended Complaint. Mohring alleges that doctors were recommending corrective surgery for his spinal cord prior to his incarceration but he never received surgery. Mohring alleges that as a result of his injuries, he has difficulties walking, climbing, and lifting. On September 25, 2019, Mohring received a low bunk/low gallery ADA permit for his injuries and the permits have been renewed for the entirety of his incarceration.

On May 10, 2023, Mohring transferred to Centralia Correctional Center. At the time of his transfer, he still had a valid low bunk/low gallery permit. At intake, John Doe Norse #1 and Jane Doe Nurse #1 informed Mohring that his permit was not valid at Centralia. They noted that the prison did not honor or accept ADA permits from other facilities per orders from Healthcare Unit Administrator Christine Vinyard. The nurses informed him that he would need to see a doctor at Centralia before his permit would be honored, but they noted that the prison lacked a doctor on site and that it could take up to six to eight months to see a doctor. They informed him that until he saw a doctor, his permit would not be honored.

In late June 2023, Mohring was assigned to an upper bunk. At some point during the last week of June, Mohring suffered a seizure and fell from the top bunk, causing injury to his right shoulder and right knee. He informed staff of the injury, and they told him to put in a sick call request. He immediately submitted a sick call request. On July 1, 2023, he submitted a grievance because he had not seen a doctor since his intake interview with the nurses. On July 11, 2023, he filed another grievance about his injuries. Mohring believes that the fall and resulting injuries would not have occurred if his ADA permits were honored or re-issued in a timely fashion.

On July 12, 2023, Mohring saw Dr. Caldwell for his injuries. Dr. Caldwell ordered tests for his injuries, although he failed to inform Mohring of the exact tests that were being ordered. Mohring requested a slow walk permit, low bunk permit, a sling for his shoulder, and an assistive device to help him walk with his injured knee. He informed Dr. Caldwell that he previously had a low bunk permit prior to his transfer. He also requested physical therapy and pain medication. Dr. Caldwell refused the requested items pending the outcome of the tests.

On July 19, 2023, Mohring received x-rays of his right shoulder. He still continued to suffer pain from his injuries, including a feeling that his shoulder and knee were popping in and out of place. He also felt the loss of sensation in his arm and hand. On July 23, 2023, he was informed by staff that his past medical records had been ordered as well as an x-ray of his right knee. He received a temporary low bunk permit from July 20, 2023, through August 20, 2023, but he never received or saw a physical copy of the permit.

On July 26, 2023, Mohring received an x-ray of his right knee, and on August 4, 2023, he was assigned a low bunk. On August 8, 2023, Mohring saw Dr. Meyers for his injuries. Dr. Meyers ordered a CT scan of his knee and shoulder. He also ordered a low bunk permit for six months. Mohring alleges that he later learned that a CT scan was not proper for his injuries because only an MRI could properly diagnose his injuries. On November 22, 2023, Mohring received his ordered CT scans. On both December 5, 2023, and January 1, 2024, Mohring inquired of healthcare staff about the results from those scans. On both occasions, he was informed that the results were not yet on file, and he would need to see the doctor, a wait that could take up to eight months.

On April 3, 2024, Dr. Khan saw Mohring for gastrointestinal issues, including a request for a gastrointestinal referral. Dr. Khan renewed the low bunk permit and submitted an order for Mohring to receive closer housing. Although Dr. Khan specifically acknowledged that Mohring needed to see an orthopedist, he informed Mohring that he was placing the need "on the back burner" until Mohring's gastrointestinal issues were resolved. Dr. Khan noted that Mohring had too many issues to deal with all at once. Mohring alleges that it will be over a year from the injury before he receives medical care for his injuries.

On May 29, 2024, Dr. Arora started to place an order for injections and physical therapy for Mohring's right shoulder injury. Before issuing the orders, Nurse Jana Reuter informed Dr. Arora that he was supposed to stop ordering injections and physical therapy to patients based on orders from Dr. Babich. Dr. Arora then declined to order the treatment.

4

On March 10, 2025, Mohring received an MRI of his right shoulder showing a superior tear of the Labrum, but he has not yet received an MRI of his right knee.

In addition to the defendant providers from whom Mohring sought treatment, Mohring alleges Wexford Health Sources, Inc. is liable because they had a practice of failing to timely hire doctors for Centralia and for having a policy and/or practice of refusing to honor permits after a transfer.

<u>**Preliminary Dismissals**</u>

Mohring fails to include any specific allegations against Warden Daniel Monti. Instead, he alleges that the warden is liable, in his individual capacity, for failing to ensure that the prison is protecting inmate's ADA rights, and that Monti allowed a policy to develop that led to staff denying and refusing to honor valid ADA permits. A warden cannot be liable for the actions of his staff, but he can be liable if "kn[e]w about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [he] might see." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). But Mohring only alleges in conclusory fashion that Monti allowed the policy to develop. There are no allegations to suggest that Monti was aware of the practice of medical staff refusing to honor ADA permits from other prisons or that he was personally aware that Mohring's permits were not honored. Thus, Mohring fails to state a claim against Monti.

<u>**Discussion**</u>

Based on the allegations in the Amended Complaint, the Court designates the following counts:

**Count 1:**   **Eighth Amendment deliberate indifference to medical needs claim against John Doe Nurse #1, Jane Doe Nurse #1, and Christine Vinyard for refusing to honor Mohring's ADA permits upon arrival at Centralia.**

**Count 2:**   **ADA claim against IDOC officials for refusing to honor Mohring's valid ADA permits at Centralia.**

**Count 3:**   **Eighth Amendment deliberate indifference claim against Wexford for having a policy and/or practice of failing to timely hire doctors and for refusing to honor ADA permits after a prison transfer.**

**Count 4:**   **Eighth Amendment deliberate indifference to medical needs claim against Dr. Caldwell, Dr. Percy Meyers, Dr. Khan, Dr. Arora, and Nurse Jana Rueter for refusing and/or delaying care for Mohring's injuries after his fall.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly* **pleading standard**.[1]

At this stage, Mohring states a viable claim against John Doe Nurse #1, Jane Doe Nurse #1, and Christine Vinyard for the denial of his ADA permits. Mohring alleges that he informed both nurses of his valid permit upon his arrival at Centralia, but they refused to honor the permit. Mohring further alleges that the refusal to honor his permit led to him being assigned to a top bunk and suffering injuries when he subsequently suffered

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

a fall from the bunk. Mohring also alleges that Christine Vinyard developed and enforced the practice of refusing another prison's ADA permit. He alleges that both nurses indicated that they would not honor his permit based on orders from Christine Vinyard. Although Vinyard cannot be liable for the actions of the nurses as the healthcare administrator, she can be liable if she knew about the actions and facilitated, approved, condoned, or turned a blind eye to it. *Gill*, 850 F.3d at 344. She can also be liable if she created or enforced a policy that caused the constitutional violation. *Daniel v. Cook Cnty.*, 833 F.3d 728, 737 (7th Cir. 2016). Here Mohring alleges that the nurses told him they were acting at the direction of Vinyard. At this early stage, that is enough to state a claim against Vinyard. Although the deliberate indifference claim against Warden Daniel Monti is dismissed, he shall remain in the case (in his official capacity only) to respond to discovery aimed at identifying the unknown nurses.

Mohring also states a viable claim for violations of the ADA. *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the ADA. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Mohring alleges that he is suing Director Latoya Hughes, in her official capacity, as the official charged with enforcing the ADA. Thus, Count 2 shall proceed against Latoya Hughes (in her official capacity only).

Mohring also states a claim against Wexford. He alleges that Wexford created policies and practices that led to his injuries and delays in his care. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Thus, Count 3 will proceed.

Finally, Mohring states a viable deliberate indifference claim against Dr. Caldwell, Dr. Percy Meyers, Dr. Khan, Dr. Arora, and Nurse Jana Rueter for failing to provide him with proper treatment after his injury and delaying his care. Mohring alleges that each provider denied him medications, care, and proper testing after his injury. He also alleges that the doctors delayed care. For instance, he alleges that Dr. Meyers initially ordered the wrong testing, delaying a proper diagnosis for his injuries. He also alleges that Dr. Khan specifically stated that Mohring would not receive care for his injuries until after his gastrointestinal issues were resolved. Thus, Count 4 will proceed.

## Disposition

For the reasons stated above, Count 1 shall proceed John Doe #1, Jane Doe #1, and Christine Vinyard. Count 2 shall proceed against Latoya Hughes (official capacity only). Count 3 shall proceed against Wexford Health Sources, Inc. and Count 4 shall proceed against Dr. Caldwell, Dr. Percy Meyers, Dr. Khan, Dr. Arora, and Nurse Jana Rueter. Although any potential claim against Daniel Monti is **DISMISSED without prejudice**, he shall remain in the case (in his official capacity) in order to respond to discovery aimed at identifying the unknown nurses.

8

The Clerk of Court shall prepare for Christine Vinyard, Latoya Hughes (official capacity), Wexford Health Sources, Inc., Daniel Monti (official capacity), Dr. Caldwell, Dr. Percy Meyers, Dr. Khan, Dr. Arora, and Nurse Jana Rueter: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Mohring. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure. Mohring's motion for service at government expense (Doc. 2) is **MOOT**.

If a defendant can no longer be found at the work address provided by Mohring, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

9

Because Mohring's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Mohring, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Mohring is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 10, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**